PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHELLE WOODS,                     )
                                    )   CASE NO.  1:21-CV-01163
                Plaintiff,          )
                                    )
        v.                          )   JUDGE BENITA Y. PEARSON
                                    )
COMMISSIONER OF THE SOCIAL          )
SECURITY ADMINISTRATION,            )
                                    )   **MEMORANDUM OF OPINION AND**
                Defendant.          )   **ORDER**


        Plaintiff, Michelle Woods, seeks judicial review of the Commissioner of the Social

Security Administration's final decision, denying her application for Supplemental Security

Income ("SSI").  Transcript of Proceedings, ECF No. 7 at PageID #: 56.   Plaintiff challenges

the administrative law judge's ("ALJ") findings, contending that the ALJ erred in finding

Plaintiff "not disabled under section 1614(a)(3)(A) of the Social Security Act."  _Id._ at PageID #:

69; Plaintiff's Brief on the Merits, ECF No. 11.   For the reasons set forth below, the Court

affirms the Commissioner's decision.

### I.  Procedural History

        Plaintiff applied for SSI on April 29, 2019, alleging that her disability commenced on

November 30, 2018.  ECF No. 7 at PageID #: 56.  The Social Security Administration initially

denied Plaintiff's claim on July 1, 2019.  _Id._  Plaintiff then filed a written request for an

administrative hearing, which was held on July 9, 2020.  _Id._  During the hearing, both Plaintiff,

who was represented by counsel, and a vocational expert testified.  On August 3, 2020, the

(1:21-CV-01163)

Commissioner rendered a final decision denying Plaintiff's claim.  In doing so, the ALJ

determined that Plaintiff has:

> the residual functional capacity to perform light work as defined in
> 20 CFR 416.967(b) except the claimant can occasionally lift and
> carry 20 pounds and frequently lift and carry ten pounds; can stand
> and walk for six hours of an eight-hour workday; can sit for six
> hours of an eight-hour workday; can occasionally push and pull;
> can occasionally climb ramps and stairs; can never climb ladders,
> ropes, and scaffolds; can occasionally balance, stoop, kneel,
> crouch, and crawl; can frequently handle, finger, and reach
> bilaterally; can perform simple, routine tasks (unskilled work); can
> have superficial interaction (meaning of a short duration and for a
> specific purpose) with coworkers; can have no direct work with the
> general public; can perform work with infrequent changes; and can
> perform low-stress work with no arbitration, negotiation,
> responsibility for the safety of others and/or supervisory
> responsibility.

ECF No. 7 at PageID #: 61.  Plaintiff requested the Appeals Council to review this

August 3, 2020 decision.  On May 7, 2021, the Appeals Council denied further review, rendering

the Commissioner's decision final.  Id. at PageID #: 22.

On October 12, 2021, Plaintiff filed a complaint to obtain judicial review of the

Commissioner's final decision.  ECF No. 11.  Plaintiff asserts that the ALJ erred: 1) in finding

Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms to

be inconsistent with the medical evidence; and 2) in finding Plaintiff has the residual functional

capacity to perform light work.  Id. at PageID #: 1010.

2

(1:21-CV-01163)

## II. Evidence

### A.  Personal, Educational, and Vocational Background

Plaintiff was born in 1984 and was 34 years old when she filed her SSI application and when her disability allegedly commenced.  *Id.* at PageID #: 1012.  She has an eleventh-grade education and no past relevant work experience.  *Id.*

### B.  Treatment Records

With respect to Plaintiff's physical impairments, Plaintiff began seeing her primary care physician, Dr. Damm, as early as February 2018.  ECF No. 7 at PageID #: 314.  During the relevant period, Dr. Damm has examined Plaintiff on at least ten separate occasions.  Over the course of Plaintiff's visits with Dr. Damm, recurring diagnoses relating to physical impairments have included chronic back pain, hip pain, pelvic pain, and abdominal pain.  During these appointments, Plaintiff appeared to Dr. Damm to be "oriented to person, place, and time" with no distress.  *Id.* at PageID #: 314–44.  The ALJ summarized the relevant treatment records relating to Plaintiff's doctor's visits with Dr. Damm as follows:

> Treatment notes from the claimant's primary care provider, William Damm, M.D., support that the claimant is not more limited than found above.  First, several of Dr. Damm's examinations were normal (2/14/2018, Exhibit B1F, page 8; 4/10/2018, Exhibit B1F, page 15; 6/5/1[9], Exhibit B8F, page 43; 8/28/2019, Exhibit B10F, page 7; 12/21/2019, Exhibit B15F, page 5).  Other examinations showed unspecified tenderness. For instance, the claimant presented to Dr. Damm for anxiety and back pain on September 28, 2018 (Exhibit B1F, page 29).  The claimant had unspecified tenderness.  Psychiatric notes showed normal mood and affect.  Other notes also show unspecified tenderness in the back (e.g. 3/18/2019, Exhibit B7F, page 53).  Dr. Damm treated the claimant with medications (e.g. 3/18/2019, Exhibit B7F, page 53; 8/28/2019, Exhibit B10F, page 7; 12/21/2019, Exhibit B15F, page 6).

3

(1:21-CV-01163)

> Several notes indicate that the claimant is obese.  For instance, treatment notes from December 21, 2019, described the claimant as weighing 172 pounds and having a body mass index ("BMI") of 32.67.  In the medical community, obesity is defined as a BMI of 30 or higher (SSR 19-2p).  Pursuant to SSR 19-2p, the undersigned has considered the limiting effects of the claimant's obesity.  This includes that the combined effects of obesity with another impairment may be greater than the effects of each of the impairments considered separately.

ECF No. 7 at PageID #: 62.

As for Plaintiff's mental health records, over the years, she has attended multiple psychotherapy sessions and has seen multiple providers.  In addition to therapists and psychiatrists, Dr. Damm has also diagnosed Plaintiff with anxiety and prescribed medication to help alleviate her anxiety symptoms. The ALJ provided the following thorough review of Plaintiff's mental health records:

> Turning to mental, the record consistently shows the claimant having problems with mood and affect but cooperative without noted deficits in concentration or memory.  Notes further describe the claimant as well groomed.  During the relevant time period, the claimant underwent a great deal of stress regarding losing custody of her children.
>
> The early record shows the claimant receiving pharmacological management from her primary care physician, William Damm, M.D.  The claimant presented to her primary care doctor, William Damm, M.D., on March 18, 2019, with complaints of generalized anxiety and stress (Exhibit B7F, page 52).  The claimant indicated that she had felt this way for six months.  The claimant was prescribed Xanax to take three times a day.  Treatment notes from June 5, 2019, show that the claimant was prescribed 30 milligrams of Cymbalta.  On August 28, 2019, Dr. Damm indicated that the claimant had normal mood and affect (Exhibit B10F, page 7).

4

(1:21-CV-01163)

The claimant underwent an initial psychiatric evaluation on October 23, 2019 (Exhibit B12F).  Mental status notes described the claimant as well groomed; having logical thought processes; and having expressive language.  The claimant was alert.  The claimant had fair memory.  The claimant had a euthymic mood but a constricted affect.  The claimant stated that she wanted to see a psychiatrist because she was not sure if Cymbalta prescribed by her primary care provider was the right medicine for her.  The claimant reported increased goal-directed behavior related to cleaning.  The claimant followed up with psychiatry on December 30, 2019 (Exhibit B13F, page 16).  The claimant described her mood as, "ok, I guess."  However, the claimant reported poor sleep.  Mental status notes described the claimant as alert with fair memory but depressed with a flat affect (Exhibit B13F, page 17).  The claimant next followed up with psychiatry on January 28, 2020 (Exhibit B14F, page 12).  Mental status notes continued to describe the claimant as alert with fair memory but anxious with a constricted affect.  The claimant described her mood as good but indicated that she had poor sleep.

Treatment notes from May 27, 2020, indicated that the claimant had last been seen by psychiatry three months prior, even though she was supposed to follow up in four weeks (Exhibit B17F, page 2).  The claimant stated that she had stopped taking medications and had a "horrible" mood. The claimant indicated that she continued to take Xanax.  The claimant reported that Wellbutrin caused agitation.  The claimant also stopped Trileptin even though denying side effects from it.  Despite this, mental status notes continued to describe the claimant as alert and expressive with fair memory.  The claimant had anxious mood and affect.  The claimant was started on Latuda.  The claimant was noted to receive Cymbalta and Xanax from her primary care provider.  Notes from December 21, 2019, indicated that Dr. Damm continued to prescribe Xanax (Exhibit B15F, page 6).

The claimant presented for an initial psychotherapy assessment on July 30, 2018 (Exhibit B6F, page 16).  The claimant reported having depression and anxiety symptoms due to not having her children with her.  The claimant indicated that her mother and boyfriend were great support.  The claimant reported that she could not work because she feels anxious when around a lot of people.  The claimant reported that her children were taken from her due to false accusations from their father.  Mental status notes described

5

(1:21-CV-01163)

the claimant as well groomed with average eye contact. The claimant had an anxious mood but a full affect and cooperative behavior. The claimant did not demonstrate any difficulty with attention and concentration (Exhibit B6F, page 13). The claimant reported that she lives with her boyfriend. The claimant reported being a good cook.

Subsequent psychotherapy notes show the claimant experiencing stress from wanting her children back. Notes generally described the claimant as having problems with mood but cooperative.

For instance, psychotherapy notes from July 31, 2018, described the claimant as anxious and upset but having appropriate behavior and functioning (Exhibit B6F, page 17). Psychotherapy notes from March 20, 2019, showed the claimant was depressed and anxious but had logical thought processes, and was cooperative and engaged (Exhibit B5F, page 14). The claimant indicated that the county had temporary custody of her children, and she hoped to regain custody.

Mental status notes from April 12, 2019, described the claimant as cooperative; having logical thought processes; oriented in all spheres; and having full affect but irritable (Exhibit B5F, page 10). The claimant reported that she completed all obligations with child protective services apart from housing and did not feel comfortable living in subsidized housing.

Psychotherapy notes from April 16, 2019, described the claimant as anxious with a constricted affect but logical and cooperative (Exhibit B5F, page 16). Treatment notes from May 1, 2019, described the claimant as anxious with a constricted affect but rapid and logical thought process and cooperative behavior (Exhibit B5F, page 18). The claimant continued to express stress related to children's services. Treatment notes from June 5, 2019, show that the claimant brought her mother to the appointment, as she was the claimant's support (Exhibit B5F, page 20). The claimant was anxious, restless, and had slightly avoidant eye contact; however, she remained cooperative.

Psychotherapy notes from July 15, 2019, continued to describe the claimant as anxious and depressed but cooperative and engaged (Exhibit B9F, page 10). The claimant reported that she was looking into GED classes that she could take online. The claimant continued to endorse stress related to children's services. The

6

(1:21-CV-01163)

claimant indicated on July 29, 2019, that she had lost custody of her two youngest children (Exhibit B9F, page 12).  The claimant remained cooperative and engaged but had avoidant eye contact.

Psychotherapy notes from August 20, 2019, described the claimant as cooperative and engaged but anxious and depressed with avoidant eye contact (Exhibit B12F, page 12).  Treatment notes from October 22, 2019, described the claimant as anxious but cooperative and restless (Exhibit B12F, page 14).  Treatment notes from November 6, 2019, remained similar (Exhibit B12F, page 16).

Therapy notes from January 21, 2020, described the claimant as anxious with a restricted affect (Exhibit B14F, page 14).  The claimant had appropriate behavior in the session.  The claimant started with a new counselor and apologized at the end of the session for avoidant eye contact.

Therapy notes from February 11, 2020, described the claimant as anxious with a restricted affect and having avoidant eye contact and restricted speech (Exhibit B14F, page 16).  The claimant continued to have appropriate behavior.  The claimant reported some avoidance of situations that triggered anxiety.  Notes from March 11, 2020, continued to describe the claimant as anxious with a constricted affect but having appropriate behavior (Exhibit B16F, page 2).  The claimant reported having problems with her mother but coping by having headphones in all the time.  Mental status notes on April 2, 2020, remained similar (Exhibit B16F, page 4).  The claimant identified coping skills of going on walks, using "calm app," listening to music, and deep breathing.  Therapy notes from May 6, 2020, described the claimant as moderately anxious and depressed with appropriate behavior. Mental status notes on May 11, 2020, and May 26, 2020, remained similar.

ECF No. 7 at PageID #: 45–48.

## C.  Medical Opinions

### 1.  Treating Source -  William Damm, M.D.

On February 28, 2019, Dr. Damm completed a physical capacity assessment form on

Plaintiff's behalf.  ECF No. 7 at PageID #: 383.  It consisted of fill-in-the-blank and checked

(1:21-CV-01163)

answer responses.  Dr. Damm listed chronic back and pelvis pain as medical findings that support his assessment that Plaintiff's ability to lift or carry items are affected by her impairments.  *Id.*  Accompanying his assessment, Dr. Damm also documented that Plaintiff's MRI and X-rays were normal.  *Id.*  Given the diagnoses, Dr. Damm specified that Plaintiff is limited to lifting or carrying a maximum of twenty pounds.  *Id.*  Dr. Damm also indicated that Plaintiff's diagnoses support the finding that standing, walking, and sitting are all affected by her physical impairments, but lists as "unknown" the number of hours in an 8-hour work day that Plaintiff could perform these activities.  *Id.*  Furthermore, Dr. Damm indicated on the form that Plaintiff can only rarely perform the following activities: climb, balance, stoop, crouch, kneel, and crawl.  Dr. Damm also noted that Plaintiff can occasionally perform push or pull movements, but can frequently perform reaching, fine manipulation, and gross manipulation movements.  *Id.* at PageID #: 384.  According to Dr. Damm's responses to the form, height, moving machinery, temperature extremes, pulmonary irritants, and noise do not affect Plaintiff's impairment.  *Id.*  Dr. Damm has not prescribed Plaintiff a cane, walker, brace, TENS unit, breathing machine, oxygen, wheelchair, or any other medical assistance devices.  *Id.*  He indicated that Plaintiff experiences severe pain, which interferes with Plaintiff's concentration, takes Plaintiff off task, and can cause absenteeism.  *Id.*  He also mentioned that Plaintiff does not need to "elevate her legs at will."  *Id.*  In the final portion of the form, Dr. Damm noted that Plaintiff "would benefit from a functional capacity evaluation" or occupational or physical therapy to clarify work limitations and restrictions.  *Id.*

8

(1:21-CV-01163)

### 2.  Psychological Consultation – Ronald G. Smith, Ph.D.

On October 7, 2019, Dr. Smith conducted a clinical evaluation of Plaintiff as requested by the Division of Disability Determination.  ECF No. 7 at PageID #: 887.  He noted that Plaintiff was "cooperative with the examiner" during the evaluation and was "neat and clean in her appearance." _Id._ at PageID #: 890.  He indicated that Plaintiff's responses were "direct and to the point and her thinking was well organized." _Id._  Regarding her affect and mood, Dr. Smith described Plaintiff as showing "appropriate affective expression with a good range of affect displayed during the interview." _Id._  When Dr. Smith asked Plaintiff about her mood, Plaintiff explained that "these days . . . she always feels and anxious and . . . [will] take half a Xanax when she "feels really bad" like when she feels panicky." _Id._  After Dr. Smith prodded a bit more about her mood, Plaintiff shared that she is on the "sadder side" and cries once a week or so, but is able to "get her work done around the house." _Id._  Plaintiff also revealed to Dr. Smith that she has had suicidal thoughts but does not have "any thoughts about doing harm to others." _Id._ at PageID #: 891.  Dr. Smith noted that during the evaluation, Plaintiff was "alert and in good contact with reality.  She was well oriented to time and place with correct knowledge of the year, the date and the month, and the location and nature of the office." _Id._  Plaintiff was able to "count backwards from 20 to 1 in 15 seconds without error and . . . count[ ] from 1 to 40 by threes in 22 seconds without error." _Id._  When asked to recite the alphabet, Plaintiff "stopped at the letter "V" and seemed to have thought that was the end of the alphabet." _Id._  Dr. Smith also indicated that Plaintiff's "insight and judgment appeared to be fair." _Id._  After interviewing Plaintiff and gathering her reason for applying for disability, along with her family history, educational history, community problems, work history, medical history and symptoms,

9

(1:21-CV-01163)

psychiatric treatment or counseling, mental status, and her daily routine and activities, Dr. Smith

suggested a DSM-V diagnosis of "persistent depressive disorder (dysthymia) with intermittent

major depressive episodes, with current episode, moderate, in partial treatment remission."  *Id.* at

PageID #: 892.  Based on Dr. Smith's assessment, he described Plaintiff's as appearing "to be

capable of understanding simple one or two step job instructions that are spoken with visual

demonstration."  *Id.*  Dr. Smith noted, however, that Plaintiff "may have difficulty understanding

more complex written instructions.  If she understands the instructions[,] she should be able to

remember them[,] but her ability to carry them out successfully may be disrupted at times due to

anxiety which seems to be related to having to be around other people."  *Id.*  He also wrote that

Plaintiff "may have some difficulty maintaining adequate attention and concentration due to a

tendency to become involved in thoughts about past experiences which can result in emotionality

and also because of anxiety that she may feel if required to work around others."  *Id.* at PageID

#: 892–93.  In his last few remarks on the evaluation report, Dr. Smith indicated that Plaintiff

"may be able to respond appropriately to a supervisor who is supportive but may have difficulty

working around coworkers due to her anxiety around others," and she "may have some difficulty

dealing appropriately with work pressures."  *Id.* at PageID #: 893.  Additionally, Dr. Smith

pointed out that Plaintiff seemed to be "quite dependent on her mother for assistance and having

difficulty taking responsibility and completing tasks."  *Id.*  Lastly, Dr. Smith opined that Plaintiff

would "appear to be capable of handling funds if they were awarded."  *Id.*

### 3.  State Agency Consultants

Dimitri Teague, MD, a State agency medical consultant who reviewed Plaintiff's case file

on June 22, 2019,  determined that Plaintiff did not have severe physical impairments and her

10

(1:21-CV-01163)

medical records do not reflect significant abnormalities.  *Id.* at PageID #: 111.  Indira Jastri, MD, who reviewed Plaintiff's case file on October 23, 2019, agreed with Dr. Teague's conclusions. *Id.* at PageID #: 126.  The ALJ found these opinions unpersuasive because the consultants' conclusions are not fully supported by the record.[1]  *Id.* at PageID #: 66.

Courtney Zeune, Psy.D., a State agency psychological consultant, reviewed Plaintiff's case file on June 22, 2019, concluding that despite Plaintiff's mental health conditions, she has sufficient residual functional capacity to still have the ability to work.  *Id.* at PageID #: 114–15. Dr. Zeune based her determination on an evaluation of Plaintiff's concentration and persistence limitations, social interaction limitations, and adaptation limitations.  *Id.* at PageID #: 114.  Dr. Zeune also determined that Plaintiff does not have any understanding and memory limitations. *Id.*  Under the category of concentration and persistence, Dr. Zeune confirmed that Plaintiff suffers from anxiety, causing her to be easily distracted.  *Id.*  However, Plaintiff's level of anxiety, while limiting to some extent, does not prevent Plaintiff from being able to perform all jobs. *Id.* at PageID #: 115.  Regarding Plaintiff's social interactions limitations, Dr. Zeune opined that Plaintiff exhibits abnormal mood and affect along with occasional avoidant eye contact and restlessness.  *Id.*  Thus, Plaintiff's ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers would be moderately limited by her mental health conditions.  *Id.*  Lastly, Dr. Zeune found that Plaintiff has some moderate limitations when it comes to responding

---

[1] The ALJ disagreed with Dr. Teague and Dr. Jastri's conclusions given that the record shows that Plaintiff was treated with pain medications and the medical records indicate that Plaintiff is only "able to perform less than a full range of light work."  ECF No. 7 at PageID #: 66.

(1:21-CV-01163)

appropriately to changes in the work setting and to set realistic goals and make plans independently of others.  *Id.*  In her report, Dr. Zeune explained that Plaintiff lost custody of children, but hopes that her children will be returned to her.  *Id.*  Dr. Zeune described Plaintiff as "dependent on others to help her with life  goals."  *Id.*  Nevertheless, Dr. Zeune indicated that Plaintiff is able to "adapt to a routine work setting where changes are infrequent."  *Id.*  Juliette Savitscus, Ph.D., another State agency psychological consultant, affirmed Dr. Zeune's findings on October 24, 2019.  *Id.* at PageID #:130–31.  The ALJ found the opinions of Dr. Zeune and Dr. Savitscus to be persuasive and well supported.  *Id.* at PageID #:67.

### D.  Relevant Hearing Testimony

#### 1.  Plaintiff Michelle Woods

At the July 9, 2020 hearing, Plaintiff testified that she currently resides in a home with her mother and stepfather.  ECF No. 7 at PageID #: 83.  She occasionally helps with house chores such as laundry, vacuuming, mopping, and sweeping the kitchen.  *Id.* at PageID #: 83–84.  Although she is able to bathe, dress, and feed herself, Plaintiff does not drive.  *Id.* at PageID #: 84.  Plaintiff testified that due to her involvement in two separate car accidents that occurred on consecutive days about two or three years prior, she has developed "real[ly] bad anxiety" when she drives and has chosen not to drive altogether.  *Id.*  Plaintiff also testified that although she will sometimes shop for personal items, medications, and groceries by herself, she usually brings her mother along for comfort.  *Id.* at PageID #: 85.

During the hearing, Plaintiff discussed her mental health conditions, including depression, anxiety, post-traumatic stress disorder, and bipolar disorder.  She testified that she received Social Security Benefits from around 2011 or 2012 to 2018 due to her bipolar disorder

(1:21-CV-01163)

and depression.  _Id._ at PageID #: 88.  Since then, Plaintiff testified that her mental health condition has "definitely gotten worse."  _Id._ at PageID #: 89.  She has been taking medications to treat her depression and anxiety.  _Id._  However, she noted that her prescribed anxiety medication often makes her "extremely tired."  _Id._ at PageID #: 94.  Because of the fatigue side effect of the medication, Plaintiff mentioned that she has been working with a counselor to incorporate techniques into her everyday life to help her cope with her anxiety and to reduce the frequency and quantity of medication she needs to take to manage her anxiety.  _Id._ at PageID #: 94–95. One of the methods she testified about incorporating into her regular routine requires going to a "quiet, dark room, [to] close [her] eyes, [and] take deep breaths" for about 35 to 45 minutes every other day, if not every day.  _Id._ at PageID #: 95.

Plaintiff also testified about the physical ailments from which she suffers.  She testified that she is taking tramadol and oxycodone and was in pain management for about a year and a half.  _Id._ at PageID #: 92.  Her pain stems from her fractured tailbone along with a back issue that resulted from a car accident.  _Id._  She also provided the following medical history: abdominal issues since 2014 or 2015, removed gallbladder, hysterectomy, surgically repaired hernia, hip pain, and back pain.  _Id._ at PageID #: 92–93.

### 2.  Vocational Expert

An impartial vocational expert, Hermona C. Robinson, testified at the ALJ hearing that a hypothetical person with Plaintiff's age, education, and work experience, and physical limitations[2] could perform, as defined in the _Dictionary of Occupational Titles_, garment sorter,

---

[2] The physical limitations considered include: "can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds, can stand and walk six hours of an eight-

13

(1:21-CV-01163)

packager, and cleaner occupations.  ECF No. 7 at PageID #: 98–99.  These three occupations allow this hypothetical individual to perform "simple, routine tasks consistent with unskilled work with superficial interaction . . . and . . . no direct work with the general public." *Id.* at PageID #:98.   They would also allow the hypothetical individual with no past work experience to work in a setting with infrequent change.  *Id.*   However, when additional limitations were presented, such that the hypothetical individual "would be off task approximately 20 percent of the workday due to mental health symptoms and chronic pain" (*Id.* at PageID #: 99) or that the hypothetical individual "would be absent from work two or more days per month, [ ] due to mental health symptoms and chronic pain," (*Id.* at PageID #:100), the vocational expert testified that under those circumstances, the three occupations she listed "would all be precluded, as well as all other work in the national economy." *Id.*

### III.  Standard of Review

Upon review of the pleadings and transcript of the record, the Court must uphold the Commissioner's final decision post-administrative hearing "if it is supported by substantial evidence and if the Commissioner applied the correct legal criteria." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745–46 (6th Cir. 2007); 42 U.S.C. § 405(g).   "Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.""
*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of*

---

hour workday, [ ] can sit for six hours of an eight-hour workday . . .Can perform occasional push and pull, can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds, and can occasionally balance kneel, stoop, crouch and crawl."  ECF No. 7 at PageID #: 98.

(1:21-CV-01163)

*Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).  "Substantial evidence" does not have

a high evidentiary sufficiency threshold.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Fact

findings by the Commissioner of Social Security that are supported by substantial evidence are

conclusive.  42 U.S.C. § 405(g).  As long as the Commissioner's decision is based on substantial

evidence, the Court must affirm the decision even if the evidence could possibly support the

opposite conclusion.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (citing

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)).  Conversely, the Court will not uphold

the Commissioner's decision where it fails to follow its own agency's regulations and "where

that error prejudices a [plaintiff] on the merits or deprives the [plaintiff] of a substantial right."

*Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir.

2004)).

    The correct legal criteria for the Social Security Administration to apply when

determining whether a claimant is disabled as defined in 20 C.F.R. § 404.1505 and eligible for

SSI is a five-step sequential evaluation.  20 C.F.R. § 404.1520.  The evaluation should proceed

as follows: 1) consider the claimant's work activity to determine whether the claimant is "doing

substantial gainful activity;" 2) if not, consider the medical severity of claimant's impairment(s)

to determine whether claimant has a "severe medically determinable physical or mental

impairment that meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of

impairments that is severe and meets the duration requirement;" 3) if so, consider the medical

severity of the claimant's impairment(s), and whether it is one that meets or equals one listed in

20 C.F.R. § 404, Subpart P, Appendix 1 and meets the duration requirement; 4) if not, consider

the claimant's past relevant work history and the assessment of the claimant's residual functional

(1:21-CV-01163)

capacity to determine whether the claimant can still perform his or her past relevant work; and 5) if not, consider the assessment of the claimant's residual functional capacity, age, education, and work experience to determine whether the claimant can perform other work found in the national economy.  20 C.F.R. § 404.1520.

### IV. Analysis

Plaintiff raises two issues in her request for judicial review.  First, Plaintiff asks the Court to determine whether the ALJ erred in finding Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms to be inconsistent with the medical evidence. Second, Plaintiff asks the Court to determine whether the ALJ erred in finding that Plaintiff has residual functional capacity without the support of substantial evidence.  Because the Plaintiff did not have past relevant work experience, the ALJ correctly skipped step four of the regular five-step inquiry and proceeded to analyze the remaining four steps.  Plaintiff's arguments center on the evidence regarding the limitations posed by her mental health.

### 1.  Consistency of Plaintiff's Statements Regarding Intensity, Persistence, and Limiting Effects of Her Symptoms With Medical Evidence

Plaintiff argues that her statements are consistent with her medical records.  She contends that "the ALJ focuses on somewhat vague concerns of inconsistency to reject a long history of mental health treatment," thus the ALJ's finding that Plaintiff's statements regarding her mental health are inconsistent with mental health records are baseless.  ECF No. 11 at PageID #: 1028. In her brief, Plaintiff restates her mental health conditions that she testified about during the administrative hearing, including anxiety, mood instability, and depression, which she claims address the factors under 20 C.F.R. § 416.929 and support a finding that her mental health

16

(1:21-CV-01163)

conditions are severe enough to limit her ability to work. *Id.* at PageID #: 1026. She further argues that the State agency psychologists found her "statements regarding difficulties with social interaction and concentration, persistence and pace" to be "fully consistent with findings reflected in the medical record." *Id.* Additionally, Plaintiff argues that a distinction must be made between her identification of coping mechanisms and her actually utilizing those skills to cope with her mental health symptoms. Plaintiff concludes that the ALJ's final decision lacked "specific adequate reasons" to support its determination that Plaintiff's self-reported symptoms were inconsistent with the medical evidence. *Id.* at PageID #: 1029.

In Defendant's brief responding to Plaintiff's arguments, Defendant accurately highlights that Plaintiff's arguments against the ALJ's findings are primarily based on Plaintiff's subjective complaints. Furthermore, Defendant properly identifies that while Plaintiff's list of ailments was verified by the State agency psychologists, the fact that the symptoms Plaintiff testified about matches the symptoms notated in the experts' evaluation reports does not negate the ALJ's finding that these ailments were not severe and limiting enough to be able to find Plaintiff "disabled" under the Social Security Act definition. ECF No. 13 at PageID # 1059. Lastly, Defendant counters Plaintiff's argument that the "only other reason" that the ALJ discounted Plaintiff's subjective statements was because of Plaintiff's coping mechanisms that the ALJ cited. *Id.* at PageID #: 1060. Defendant also points to additional evidence that the ALJ cited indicating that Plaintiff's argument on this point is baseless.[3] *Id.*

---

[3] "The ALJ also pointed to other evidence, such as that she "had last been seen by psychiatry three months prior, even though she was supposed to follow up in four weeks." . . . The ALJ further pointed out that Claimant stopped taking her prescribed Trileptal even though it did not cause side effects." ECF No. 13 at PageID #: 1058.

17

(1:21-CV-01163)

The ALJ properly evaluated Plaintiff's statements and the relevant medical evidence in the record.  The Commissioner's decision concludes that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." ECF No. 7 at PageID #: 62.  During the review of Plaintiff's claim, the ALJ considered whether Plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms had been substantiated by medical evidence.  The Commissioner's final decision first summarized Plaintiff's testimony relevant to her evaluation, including Plaintiff's worsening anxiety and depression, the increased frequency of her panic attacks, her inability to work as a result of her anxiety and mood problems, her taking tramadol and opiates for pain management, her constant abdominal pain, and her having problems when stretching or bending.  *Id*.  The written decision then went into detail about the medical records evidence to compare and contrast the extent of consistency between these records and Plaintiff's testimony.  *Id.* at PageID #: 62–65.  Although Plaintiff attempted to paint a picture of her severe medical limitations, the medical evidence does not support a finding that Plaintiff's impairments actually meet the severity threshold necessary for her to be eligible to receive SSI.  Ultimately, the ALJ did not err when determining that Plaintiff's statement about the intensity, persistence, and limiting effects of her symptoms was not entirely consistent with the evidence in the record.

## 2.  ALJ Determined That Plaintiff Has Residual Functional Capacity

Plaintiff asserts that the ALJ erred in relying primarily on the State agency consultants when assessing Plaintiff's residual functional capacity and provides five supporting reasons. ECF No. 11 at PageID #: 1030.  First, she claims that "the agency psychologists who reviewed

18

(1:21-CV-01163)

the record did not have the benefit of reviewing any of the treatment records from the managing provider at NORD nor most of the psychotherapy records." *Id.*  Second, she also claims that the Commissioner's decision failed to account for the mental health examination conducted by Jessica Smith, MSN, APRN, in October 2019.  *Id.*  Third, Plaintiff notes that despite the ALJ finding Ronald Smith's opinion from his consultative psychological evaluation of Plaintiff to be persuasive, his opinion was not referenced in the ALJ's determination that Plaintiff has residual functional capacity.  *Id.*  Fourth, Plaintiff provides that her "mental impairments impose greater non-exertional limitations than found in the ALJ's" decision.  *Id.* at PageID #: 1031.  In support of this claim, Plaintiff contends that the ALJ failed to consider all the critical evidence that would adequately reflect her actual residual functional capacity.  *Id.*  According to Plaintiff, the ALJ did not adequately evaluate "her inability to handle situations outside her home without support, her inability to interact appropriately even superficially, with co-workers and supervisors, and her inability to maintain concentration, persistence and pace on a sustained basis."  *Id.*  Lastly, Plaintiff argues that the full extent of her limitations was not fully conveyed to the vocational expert.  *Id.*  Thus, under these circumstances, Plaintiff requests that the Court remand the case to resolve the alleged errors that the ALJ committed when denying her application for SSI.  *Id.* at PageID #: 1031–32.

In response to Plaintiff's arguments, Defendant concludes that Plaintiff did not show a reversible error based on how the ALJ chose to weigh the evidence and the ALJ's finding regarding Plaintiff's residual functional capacity.  Addressing the first and second arguments in Plaintiff's brief on the merits, Defendant contends that because the ALJ explicitly considered therapy records from evaluations that occurred after the agency psychologists provided their

(1:21-CV-01163)

opinions,[4] Plaintiff's argument that the agency psychologists made a determination without reviewing the entire treatment record is inconsequential.  ECF No. 13 at PageID #: 1059.  Even if the agency psychologists did not have a chance to review portions of the record themselves, as long as the decisionmaker, the ALJ, reviews the entire treatment record and has not made any legal errors amounting to more than a harmless error, the decision is still sound.  *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 729 (6th Cir. 2014).  Regarding Plaintiff's third argument that the ALJ did not properly take into consideration the evaluation report provided by consultative examiner, Dr. Smith, Defendant argued that Dr. Smith's report did not constitute a medical opinion and that there is no indication that giving Dr. Smith's opinion more weight would change the ALJ's final determination on Plaintiff's extent of residual functional capacity.  Defendant did not expressly address Plaintiff's last two supporting arguments.  However, given the ALJ's thorough review of all the available information, the ALJ's decision regarding Plaintiff's residual functional capacity is supported by substantial evidence.  *See* ECF No. 7 at PageID #: 47–48.

Plaintiff correctly points out that the ALJ did not give equal weight to all medical records and evaluations submitted as evidence.  The ALJ, however, is not required to give all evidence equal weight to satisfy the substantial evidence standard. *See McGrew v. Comm'r of Soc. Sec., 343 F. App'x 26, 32 (6th Cir. 2009)* (the ALJ has the authority to give diminished weight to medical assessments it deems as relatively less persuasive than others existing in the record).  As

---

[4] Evidence that the ALJ did consider therapy records that post-dated the agency psychologists' evaluations is shown in the ALJ's summary of treatment records provided in the final decision.  ECF No. 7 at PageID #: 47–48.

(1:21-CV-01163)

long as the ALJ factors the entirety of the available medical records into the final decision, the

ALJ has the discretion to rely more heavily on evidence they find persuasive and less so on

evidence that they find unpersuasive.  *See id.*  The ALJ reasonably determined that the State

agency psychologists provided the most persuasive evaluations.  The State agency psychologists

provided reports which indicated that although Plaintiff did suffer from the impairments she

alleged, these impairments were not as severe as Plaintiff described them to be. The ALJ's

decision goes into detail about the opinions of numerous medical and mental health professionals

regarding Plaintiff's physical and mental health.  As revealed in Defendant's response to

Plaintiff's brief, Defendant does not rebut that Plaintiff suffers from the ailments she testified

about and that have been documented in her medical records.  ECF No. 13.   Defendant explains,

however, the severity of Plaintiff's impairments is also a critical piece of the evaluation and

Plaintiff has not sufficiently demonstrated that her impairments rise to the level of severity that

would render her devoid of residual functional capacity.  *Id.* at PageID #:1060.  Thus, the ALJ

did not err in determining that Plaintiff has residual functional capacity and is able to perform

some light work.

## V.  Conclusion

The Court finds that the ALJ did not err in reaching her decision, which is supported by

substantial evidence and proper application of the correct legal criteria.  Accordingly, the Court

affirms the Commissioner of the Social Security Administration's final decision denying

(1:21-CV-01163)

Plaintiff's application for Supplemental Security Income.


        IT IS SO ORDERED.


  September 27, 2022                            */s/ Benita Y. Pearson*
  Date                                          Benita Y. Pearson
                                                United States District Judge

22